IN THE UNITED STATES DISTRICT COURT

DISTRICT OF ARIZONA

| | |
|---|---|
| Diego Lorenzana,<br><br>　　　　Plaintiff,<br><br>v.<br><br>Axway Incorporated, et al.,<br><br>　　　　Defendants. | No. CV-21-00634-PHX-JZB<br><br>**ORDER** |

Pending before the Court are Plaintiff Diego Lorenzana's Application to Confirm Arbitration Award (Doc. 18) and Defendant Axway Incorporated's Motion to Vacate Arbitration Award (Doc. 28). For the following reasons, Plaintiff's Motion to Confirm is granted, and Defendant's Motion to Vacate is denied.

**I.    Background**

On April 14, 2021, Plaintiff filed a Complaint alleging Defendants Axway and Kevin Meeks discriminated against him based on disability under the ADA, and interfered with his sick leave rights under the FMLA and Arizona's paid sick time law (the "medical claims").[1] (Doc. 1.) He also alleged Defendants retaliated against him for complaining about discriminatory actions by Defendant Meeks based on race in violation of Title VII and Section 1981.[2] (*Id.*)

---

[1] According to the Complaint, Plaintiff suffered severe injuries after being struck by an automobile on August 6, 2019. (Doc. 1.)

[2] Plaintiff voluntarily dismissed Defendant Meeks following the arbitration hearing. (Doc. 18.)

On October 12, 2021, the parties filed a Joint Motion to Stay and Submit to Binding Arbitration stating that an agreement to arbitrate exists between the parties, and that agreement encompasses Plaintiff's claims set forth in the Complaint. (Doc. 12; *see also* Doc. 18-1 at 4-5, Exh. A.) The parties requested that the Court stay the action pending completion of arbitration, and to "retain jurisdiction to confirm the arbitration award, if any confirmation is sought, and enter judgment, if any, for the purposes of enforcement." (Doc. 12.)

On October 26, 2021, the Court granted the parties' Motion, staying the case pending completion of arbitration. (Doc. 13.) The Court also retained jurisdiction for enforcement of any subsequent arbitration award. (*Id.*) Thereafter, the parties participated in a three-day arbitration on February 8, 9, and 10, 2023. (Doc. 18-1 at 10-15, Exh. B.) The arbitrator issued his Arbitration Award on April 6, 2023, stating, in part:

> On February 8, 9 and 10, 2023, the undersigned arbitrator conducted an evidentiary hearing in this arbitration and received evidence in the form of testimony and exhibits. At the end of the proceeding on February 10, 2023, counsel for the parties confirmed that no additional evidence on the merits of the claims remained to be presented. …
>
> To recover damages pursuant to claim under [Title VII], claimant must prove that: l. He engage or participated in a protected activity, and 2. Axway, Inc. subjected him to an adverse employment action, and 3. Claimant was subjected to the adverse employment action because he participated in a protected activity, and 4. The adverse employment action would not have occurred but for his participation in the protected activity. …
>
> Similarly, to recover under 42 USC 1981, claimant must establish that: 1. Claimant engaged in an activity protected under section 1981, and 2. He was subjected to a materially adverse action after the protected activity occurred, and 3. There was a causal connection between the protected activity and the adverse action, and 4. The adverse action would not have occurred but for the claimant's participation in the protected activity. …
>
> To recover on his "medical claims" under [the ADA, FMLA, and Arizona's paid sick time law], claimant has to prove that his termination under the "department reorganization" was pretextual and motivated by his need for medical or sick leave and/or his injury. …

It is undisputed that in 2018, Mr. Meeks, a person within the leadership/management structure of Axway, Inc., (Axway) made a derogatory comment about claimant in the presence of others in the leadership/management of Axway comparing him to an animal (a sloth). There is convincing evidence that at the same time Mr. Meeks connected such comment as a comparison to Mr. Meeks' trip to a Latin American country and claimant's name and cultural heritage.

An understanding of comparing someone to a sloth, a tropical American animal commonly found in Latin American countries, here was a reference to laziness or reluctance to work by that person. Mr. Meeks and Mr. Roland Royer, another person within the management/leadership of Axway, expressed negative comments about claimant's productivity and work habits after the "sloth" comment was made.

Claimant complained to his immediate supervisor and to the respondent Meeks about the inference to his cultural heritage. Mr. Meeks apologized and then self-reported the incident to the responsible person in the human resources (HR) division within Axway. The self-reporting and his apology are acknowledgements of inappropriate culturally/racially based conduct by a person in management to an employee.

The human resources leadership at Axway, Ms. Traci Blackstone, was aware of the comment and claimant's reporting of his concern, but took no action to investigate. Appropriate action under Axway's policies would have included contacting Mr. Lorenzana or Mr. Flynn, his then direct supervisor, for more information. Ms. Blackstone accepted management's view of the incident thereby institutionalizing the discriminatory comment. …

After Axway's management became aware of the claimant's complaint about Mr. Meeks' comment, it nonetheless allowed Mr. Meeks, as one of the primary architects of the reorganization, to reassign Mr. Lorenzana under his supervision as part of the reorganization. It also accepted Mr. Meeks recommendation for claimant's termination as apart the new organizational structure. Axway accepted these recommendations without question further institutionalizing the discriminatory practice and as such bears responsibility.

After the incident in 2018 and before Mr. Meeks became the claimant's direct supervisor, Mr. Meeks began to collect information about claimant's work performance from sources other than claimant's direct supervisor. There was no credible or logical explanation for this information gathering regarding claimant except to begin preparing a campaign for retaliation for the

> complaint by claimant. In July 2019 Mr. Meeks became claimant's direct supervisor and almost immediately began the process of terminating claimant's employment with Axway.
>
> The basis for termination through reorganization was alleged to be claimant's work performance in connection with elimination of his position as a part of a reorganization. Mr. Meeks and Mr. Royer in their determination for including claimant for termination did not focus on getting customer feedback/satisfaction or his immediate supervisor's comments regarding his work performance but rather on how much time he was available in the office and his attitude.
>
> Claimant had responsibility for Axway's largest client, the Internal Revenue Service, and had been recruited in 2014 to work on that account. He had received superior work performance evaluations and salary increases based upon his work skills as well as Axway's desire to retain him as an employee. No supervisor or management person at Axway had suggested any type of Performance Improvement Plan (PIP) or adverse personnel action for claimant due to substandard work performance. Axway did not offer credible evidence of any commercial or business basis for terminating a person with claimant's work history.
>
> The only logical basis for inclusion by Mr. Meeks of Mr. Lorenzana for termination as a part of the reorganization in 2019 was in retaliation for claimant's action in confronting Mr. Meeks, his new supervisor, in 2018 regarding his derogatory and discriminatory comment comparing him to the sloth Diego, an animal in a nation of Hispanic culture.
>
> The arbitrator is convinced by the evidence that Mr. Lorenzana complained about a racially/culturally discriminatory inferential comment by a person in management at Axway, Mr. Kevin Meeks, to both Mr. Meeks and Mr. Flynn, his supervisor. The comment was reported to another person in management at Axway, Ms. Blackstone. When he had the earliest opportunity, Mr. Meeks with assistance by others in leadership at Axway retaliated against claimant by pretextually including him as the only person terminated from employment in a department reorganization. It matters not whether the reorganization was a legitimate corporate decision but rather the relevant inquiry was whether it is a convenient method to disguise the retaliation against Mr. Lorenzana under the guise of the reorganization. The termination or elimination of his employment with Axway would not have occurred without the claimant's participation in the protected activity in 2018. …

(Doc. 18-1 at 10-15, Exh. B.)

After consideration of the evidence presented, the arbitrator concluded that Plaintiff sustained his burden of proof under Title VII and Section 1981, and awarded total damages against Defendant in the amount of $822,736.61, inclusive of $672,736.61 in backpay and $150,000 in compensatory damages plus pre- and post-judgment interest. (*Id.*) He also found that since the decision to terminate Plaintiff's employment was made prior to his injuries and not because of his injuries or request for sick leave, Plaintiff failed to establish that Defendant terminated him "under the pretext of avoiding his remedies and rights under the "medical claims."[3] (*Id.*)

Plaintiff filed his Application to Confirm Arbitration Award on May 8, 2023. (Doc. 18.) The Court lifted the stay on June 5, 2023, and Defendant filed its Motion to Vacate Arbitration Award on July 5, 2023. (Docs. 25, 28.)

**II.    Legal Standard**

Under the Federal Arbitration Act ("FAA"), a party to an arbitration may apply to the Court for an order confirming the arbitration award, and the Court "must grant such an order unless the award is vacated, modified, or corrected as prescribed in sections 10 and 11 of [the FAA]." 9 U.S.C. § 9.

An arbitration award review is "both limited and highly deferential." *Comedy Club, Inc. v. Improv W. Assocs.*, 553 F.3d 1277, 1288 (9th Cir. 2009); *Kyocera Corp. v. Prudential–Bache Trade Servs., Inc.*, 341 F.3d 987, 994 (9th Cir. 2003) (en banc) ("The Federal Arbitration Act, 9 U.S.C. §§ 1–16, enumerates limited grounds on which a federal court may vacate, modify, or correct an arbitral award."). "Neither erroneous legal conclusions nor unsubstantiated factual findings justify federal court review of an arbitral

---

[3] The arbitrator also found that although the employment contract between the parties required the arbitrator to award reasonable attorneys' fees to the prevailing party in arbitration, he found no prevailing party since each party was successful on "one-half of the claims or defenses to the claims." As such, the arbitrator declined to award attorneys' fees to any party and ordered that each party bear their own attorneys' fees and costs. (Doc. 18-1 at 14-15, Exh. B.)

award." *Bosack v. Soward*, 586 F.3d 1096, 1102 (9th Cir. 2009). Nonetheless, the Ninth Circuit has held that "[a]lthough an arbitrator has great freedom in determining an award, he may not dispense his own brand of industrial justice." *Garvey v. Roberts*, 203 F.3d 580, 588–89 (9th Cir. 2000) (quoting *Pac. Motor Trucking Co. v. Auto. Machinists Union*, 702 F.2d 176, 177 (9th Cir. 1983)).

As relevant in this case, the FAA authorizes a court to vacate an arbitration award "where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made." 9 U.S.C. § 10(a)(4). Arbitrators "exceed their powers" when the award is "completely irrational" or in "manifest disregard of the law." *See Comedy Club*, 553 F.3d at 1288; *Biller v. Toyota Motor Corp.*, 668 F.3d 655, 665 (9th Cir. 2012). "Completely irrational" means an award "fails to draw its essence from the agreement." *Id.* In other words, an "arbitration award draws its essence from the agreement if the award is derived from the agreement, viewed in light of the agreement's language and context, as well as other indications of the parties' intentions." *Lagstein v. Certain Underwriters at Lloyd's, London*, 607 F.3d 634, 642 (9th Cir. 2010) (quoting *Bosack*, 586 F.3d at 1106). Manifest disregard of the law means that "the arbitrators recognized the applicable law and then ignored it." *Luong v. Circuit City Stores, Inc.*, 368 F.3d 1109, 1112 (9th Cir. 2004). "These grounds afford an extremely limited review authority, a limitation that is designed to preserve due process but not to permit unnecessary public intrusion into private arbitration procedures." *Kyocera*, 341 F.3d at 997. Arbitration awards should be confirmed if the "arbitrators' interpretation was 'plausible.'" *Employers Ins. of Wausau v. Nat'l Union Fire Ins. Co. of Pittsburgh*, 933 F.2d 1481, 1486 (9th Cir. 1991). "The burden of establishing grounds for vacating an arbitration award is on the party seeking it." *U.S. Life Ins. Co. v. Superior Nat. Ins. Co.*, 591 F.3d 1167, 1173 (9th Cir. 2010).

### III. Discussion

Defendant seeks vacatur of the Arbitration Award arguing that the arbitrator exceeded his powers by manifestly disregarding the applicable law. Specifically,

Defendant contends that the arbitrator manifestly disregarded the well-established test for protected activity under Title VII and Section 1981. Defendant also argues that the arbitrator manifestly disregarded the standard of proof for an award of backpay. Defendant presents additional, non-statutory grounds for vacatur claiming that the arbitrator acted as a "super-personnel department," and claiming the award was arbitrary and capricious and contrary to public policy.

### A. Whether the Arbitration Award is in Manifest Disregard of the Law

"'Manifest disregard of the law' means something more than just an error in the law or a failure on the part of the arbitrators to understand or apply the law." *Michigan Mut. Ins. Co. v. Unigard Sec. Ins. Co.*, 44 F.3d 826, 832 (9th Cir. 1995), *as amended* (Feb. 8, 1995). "It must be clear from the record that the arbitrators recognized the applicable law and then ignored it." *Id.* "[E]ven misstatements of the law followed by erroneous application of the law do not provide grounds upon which a reviewing court may vacate an arbitral award under the FAA." *Biller*, 668 F.3d at 668 n.7. "[M]anifest disregard of the law for the purposes of the FAA occurs only where there is evidence that the Arbitrator knew the law but ignored it nonetheless." *Id.* Thus, arguing that an arbitrator "misunderstood the law and misapplied it" does not supply sufficient grounds for vacatur. *Id. See also Bosack*, 586 F.3d 1096, 1104 (9th Cir. 2009) ("To demonstrate manifest disregard, the moving party must show that the arbitrator understood and correctly stated the law, but proceeded to ... intentionally disregard[ ] it.") (internal quotation marks and brackets omitted). "There must be some evidence in the record, other than the result, that the arbitrators were aware of the law and intentionally disregarded it." *Bosack*, 586 F.3d at 1104 (brackets omitted).

#### 1. Protected Activity under Title VII and Section 1981

Defendant argues that the arbitrator exceeded his authority by willfully disregarding the correct legal standard for protected activity under Title VII and Section 1981. Specifically, Defendant states that the arbitrator "assessed whether the comment [Plaintiff] complained of *could be racially offensive* – not whether [Plaintiff] complained of race

discrimination." Defendant contends that the undisputed record establishes Plaintiff did not report any racial discrimination.

In support of its argument that the arbitrator "knew the correct legal standard," Defendant states (1) that the arbitrator recited the correct legal standard for retaliation claims in his decision, (2) the standard was reiterated in Defendant's pre- and post-hearing briefs, and (3) the arbitrator had prior experience hearing employment law claims. Defendant then attempts to establish that the arbitrator knowingly rejected the correct legal standard by assessing only whether the "sloth" comment itself could be considered racially offensive – not whether Plaintiff actually referenced race in reporting the incident. The Court, however, does not find the arbitrator's analysis amounts to manifest disregard of the law under the FAA.

To the contrary, it is apparent from the record that the arbitrator thoughtfully considered and applied the caselaw to the facts of this case. Protected activity, at its core, occurs when an employee "protest[s] or otherwise oppose[s] unlawful employment discrimination directed against employees protected by Title VII."[4] *Moyo v. Gomez*, 40 F.3d 982, 984 (9th Cir. 1994). The protest or opposition can take different forms such as filing a complaint with the EEOC or simply making an informal complaint to a supervisor; even complaints made for the protection of employees in a protected class for which the protestor does not identify will suffice. *See Ray v. Henderson*, 217 F.3d 1234, 1240 n.3 (9th Cir. 2000) (citations omitted). "An employee need not utter magic words to put his employer on notice that he is complaining about unlawful discrimination." *Maner v. Dignity Health*, 350 F.Supp.3d 899, 906 (D. Ariz. 2018) (citing *Ekweani v. Ameriprise Fin., Inc.*, No. CV-08-01101-PHX-FJM, 2010 WL 481647, at *6 (D. Ariz. Feb. 8, 2010)). Nonetheless, an employee's activity is protected if his conduct "refers to some practice by

---

[4] When analyzing § 1981 claims, courts apply "the same legal principles as those applicable in a Title VII disparate treatment case." *Fonseca v. Sysco Food Servs. of Ariz.* Inc., 374 F.3d 840, 850 (9th Cir. 2004)).

the employer that is allegedly unlawful" under Title VII. *E.E.O.C. v. Crown Zellerbach Corp.*, 720 F.2d 1008, 1013 (9th Cir. 1983).

Here, the arbitrator found it "undisputed" that "Mr. Meeks, a person within the leadership/management structure of Axway, Inc., (Axway) made a derogatory comment about claimant in the presence of others in the leadership/management of Axway comparing him to an animal (a sloth)." The arbitrator stated that "[a]n understanding of comparing someone to a sloth, a tropical American animal commonly found in Latin American countries, here was a reference to laziness or reluctance to work by that person." The arbitrator found that Plaintiff complained to his immediate supervisor and to Mr. Meeks "about the inference to his cultural heritage," and that "human resources leadership at Axway, Ms. Traci Blackstone, was aware of the comment and claimant's reporting of his concern, but took no action to investigate." (Doc. 18-1 at 10-15, Exh. B.)

Thus, the Court finds that Defendant fails to identify any evidence in the record establishing that the arbitrator knew and understood the law but purposely chose to disregard it. *Bosack*, 586 F.3d at 1104-05. To the extent Defendant takes issue with the arbitrator's factual determination, the Ninth Circuit has made emphatically clear, a district court may not vacate an arbitral award due to "unsubstantiated factual findings." *Kyocera*, 341 F.3d at 994; *see also Biller*, 668 F.3d at 664 ("the FAA does not authorize a judicial merits review of arbitration awards."); *Bosack*, 586 F.3d at 1105 (Reviewing courts "have no authority to re-weigh the evidence.").

### 2. Award of Backpay

Defendant next contends that the arbitrator exceeded his authority by improperly ignoring standing laws limiting backpay. Defendant argues the law makes clear that an individual may only recover backpay for periods in which he could have worked. Defendant states that uncontroverted medical evidence shows that Plaintiff could not work due to his injuries, and that he collected disability benefits as a result, thereby precluding an award for backpay.

Citing to its pleadings and objections to the arbitrator's initial draft award,

Defendant states that it "reminded" the arbitrator of the well-established precedent limiting backpay, and further cites to the arbitrator's experience with employment matters, claiming that the arbitrator was aware of the correct standard. Yet, Defendant states that the arbitrator intentionally rejected the requirement to reduce Plaintiff's backpay based on his "own sense of what was fair and equitable." The Court again finds, however, that the arbitrator's analysis does not amount to manifest disregard of the law.

> The arbitrator found, in pertinent part:
>
> Respondent seeks a damage off-set of some amount for claimant's receipt of Social Security Disability and insurance. This is not something to which respondent is entitled to use as an off-set. Respondent, in its response to the draft arbitration award relies upon authority from the United States Court of Appeals for the Second Circuit as well as an opinion the *United States District Court of the Northern District of New York. Downey v. Monro, Inc., 2022 WL 17093421 (N.D.N.Y. Nov. 21, 2022,* for the proposition that claimant is not entitled to back pay for any period during which he was drawing Social Security disability benefits. Respondent seeks to reduce the back pay here by the period of time claimant was on Social Security disability and as evidence that he was not able to work during that time.
>
> The arbitrator concludes that the better reasoning regarding collateral source payments such a Social Security disability benefits is found in the opinion of the United states District Court in Arizona relying upon Arizona law dealing with collateral source funds. A tortfeasor such as respondent will not be able to use the payment as an off-set for any amount of back pay award. *Williams v. Alhambra Sch. Dist. No. 68, No. CV-16-00461-PHX-GMS at \*4 (D. Ariz. June 28, 2019).* The Arizona case deals with pension benefits but the rationale applies here.
>
> If a claimant has to account for these amounts, then it is to the Social Security Administration or an insurance carrier in the form of some type of lien and not to a wrong-doer who has caused economic harm to a claimant.
>
> Respondent argues that the fact claimant applied for and received disability insurance and Social Security benefits as evidence that he was not able to work during the period of payment from the Social Security Administration. Axway also argues that his medical records are conclusive evidence of his inability to work until at least May 17, 2021. The arbitrator reviewed these records and balanced these exhibits against claimant's testimony that he could have worked at Axway with a reduced travel schedule after his accident

after use of his sick leave of 12 weeks as an employee. He also testified that he was able to walk by November 2019. After consideration of the evidence, the arbitrator finds claimant's testimony more persuasive concerning his ability to work.

(Doc. 18-1 at 13-15, Exh. B.)

The arbitrator additionally found that backpay is an equitable remedy, and stated "[i]t would be inequitable to allow circumstances such as his post-employment accident and subsequent medical condition to be used as a shield to prevent recovery of this type of equitable remedy." (*Id.*)

The Court rejects Defendant's arguments because the arbitrator's analysis and finding were not "completely irrational" or in "manifest disregard of the law." *See Comedy Club*, 553 F.3d at 1288. The arbitrator plainly analyzed the applicable caselaw and the evidence presented, including Plaintiff's own testimony, in ultimately finding Plaintiff's testimony regarding his ability to work more persuasive. Again, manifest disregard of the law "means something more than just an error in the law or a failure on the part of the arbitrators to understand or apply the law." *Collins v. D.R. Horton, Inc.*, 505 F.3d 874, 879 (9th Cir. 2007). "It must be clear from the record that the arbitrator[] recognized the applicable law and then ignored it." *Id.* Defendant has not proffered any evidence that the arbitrator intentionally ignored the applicable law. It is Defendant's burden to provide such evidence, and it has failed to do so. *Bosack*, 586 F.3d at 1104–05.

**B.   Non-Statutory Grounds for Vacatur**

In addition to its arguments made pursuant to the FAA above, Defendant also asserts non-statutory grounds for vacatur.

First, Defendant claims that the arbitrator acted as a "super-personnel department," stating that the award is based entirely on the arbitrator's own perception of fairness and equitability, rather than binding caselaw. Defendant argues that instead of applying the correct legal standard, the arbitrator sat as a "super-personnel department" and second-guessed the criteria used by Defendant in conducting a department-wide reorganization.

The Ninth Circuit has not recognized Defendant's assertion that the arbitrator acted

as a "super-personnel department" to justify vacatur of an arbitration award, and Defendant has failed to provide any authority suggesting otherwise. Instead, Defendant seems to be inviting the Court to review the merits of the Arbitration Award. The Court declines to do so. *See Lagstein*, 607 F.3d at 640–41 (explaining that § 10 of the FAA does not authorize judicial review of the merits of an arbitration award). As noted above, the Court cannot re-examine and arbitrator's factual findings or credibility assessments. *See Kyocera*, 341 F.3d at 994; *Int'l Petroleum Prods. & Additives Co. v. Black Gold, S.A.R.L.*, 418 F.Supp.3d 481, 489 n.10 (N.D. Cal. 2019).

Defendant next argues that the award was arbitrary and capricious and contrary to public policy. As to its claim that the award was contrary to public policy, Defendant states that the arbitrator "exceeded his powers" by permitting Plaintiff to recover backpay despite his representations that he was unable to work and the fact that he received benefits. Regarding his arbitrary and capricious argument, Defendant states that the arbitrator's retaliation and backpay findings are unsupported by substantial evidence of record.

Courts have recognized additional non-statutory bases upon which an arbitration award may be vacated. An arbitration award may be vacated if it is arbitrary and capricious. *Ainsworth v. Skurnick*, 960 F.2d 939, 941 (11th Cir. 1992); *Raiford v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 903 F.2d 1410, 1413 (11th Cir. 1990). And, an arbitration award may be vacated if enforcement of the award is contrary to public policy. *Twin Cities Galleries, LLC v. Media Arts Group, Inc.*, 476 F.3d 598, 600 (8th Cir. 2007); *Delta Air Lines, Inc. v. Airline Pilots Ass'n*, 861 F.2d 665, 671 (11th Cir. 1988).

Initially, the Court notes that in this Circuit, the arbitrary and capricious standard does not typically appear in cases discussing vacatur, but rather has been used in the labor arbitration context. *See, e.g.*, *Alhambra Foundry Co. v. General Warehousemen's Union*, 687 F.2d 287, 289-90 (9th Cir. 1982) (stating that "[a]n arbitrator is confined to the interpretation and application of the collective bargaining agreement and his award is legitimate only so long as it draws its essence from the agreement"; finding that, in the case under consideration, the arbitration award was neither arbitrary nor capricious). Moreover,

as a practical matter, the Court discerns no real substantive difference between Defendant's argument that the award is arbitrary and capricious (or irrational and unsupported by the record), and its argument that the award constitutes a manifest disregard of the law – which this Court has already addressed.

The Court also notes that although the Ninth Circuit has considered the public policy exception in the context of arbitration decisions subject to judicial review under the FAA, *see, e.g.*, *U.S. Life Ins. Co. v. Ins. Comm'r of California*, 160 F.App'x 559, 563 (9th Cir. 2005); *Lagstein*, 607 F.3d at 641 n.4, in *Hall Street Associates, L.L.C. v. Mattel, Inc.*, the United States Supreme Court held that "§§ 10 and 11 respectively provide the FAA's exclusive grounds for expedited vacatur and modification." 552 U.S. 576, 584 (2008). Nevertheless, to prevail on its public policy challenge of the Arbitration Award, Defendant must demonstrate that: "(1) an explicit, well defined, and dominant policy exists and (2) that the policy is one that specifically militates against the relief ordered by the arbitrator." *Fund Raising, Inc. v. Alaskans for Clean Water, Inc.*, 2012 WL 2456255, at *2 (C.D. Cal. June 26, 2012). "[C]ourts should be reluctant to vacate arbitra[tion] awards on public policy grounds." *Arizona Electric Power Cooperative, Inc. v. Berkeley*, 59 F.3d 988, 992 (9th Cir.1995) (citing *United Paperworkers Int'l Union v. Misco, Inc.*, 484 U.S. 29, 43 (1987)).

As detailed above, the arbitrator analyzed Defendant's argument, specifically comparing conflicting caselaw on the issue of whether backpay can be awarded for any period during which benefits were received, and ultimately found a tortfeasor such as Defendant cannot use benefit payments as an off-set for any amount of backpay. Thus, the Court finds that Defendant has failed to establish that "an explicit, well defined, and dominant policy exists" against awarding backpay under these circumstances pursuant to Title VII and Section 1981. *See, e.g., Cleveland v. Policy Mgt. Sys. Corp.*, 526 U.S. 795, 802-03 (1999) (finding that an application for SSDI benefits and a claim under the ADA do not inherently contradict each other such that the pursuit and receipt of SSDI benefits prevents a plaintiff from successfully asserting an ADA claim); *Johnson v. State, Oregon Dep't of Hum. Res., Rehab. Div.*, 141 F.3d 1361, 1367 (9th Cir. 1998) (finding "neither

application for nor receipt of disability benefits automatically bars a claimant from establishing that she is a qualified person with a disability under the ADA"). Having considered the factors above, the Court determines that confirming the Arbitration Award would not violate public policy.

## IV. Conclusion

Because Defendant has not raised any meritorious argument in favor of vacatur, the Court "must grant" Plaintiff's Application to Confirm Arbitration Award (Doc. 18) and deny Defendant's Motion to Vacate Arbitration Award (Doc. 28). *See* 9 U.S.C. § 9.

Accordingly,

**IT IS ORDERED** that Plaintiff's Diego Lorenzana's Application to Confirm Arbitration Award (Doc. 18) is **GRANTED**;

**IT IS FURTHER ORDERED** that Defendant Axway Incorporated's Motion to Vacate Arbitration Award (Doc. 28) is **DENIED**;

**IT IS FURTHER ORDERED** that the Clerk of the Court shall enter judgment in favor of Plaintiff confirming the Arbitration Award, dated April 6, 2023 (Doc. 18-1 at 10-15, Exh. B).

Dated this 22nd day of September, 2023.

Honorable John Z. Boyle
United States Magistrate Judge